We're going to call our last case. This is Ezemarval, LLC v. El Instituto Postal Dominicano, case number 24-11306. Good morning, Your Honors. May it please the Court, Robert Palumbis on behalf of the appellant, which does business as Mia Cardo. I'd like to reserve three minutes for rebuttal, please. Thank you, Counsel. In this Court's decision in Honduras Aircraft Registry, it described the commercial activity exception to the FSIA as follows. A foreign state loses its immunity if it engages in commercial activity because it is then exercising the same powers that a private citizen might exercise. And in this case, Mia Cardo alleged, and critically, the District Court accepted as true, all of the facts necessary to satisfy the commercial activity exception. It alleged that through its General Director, Impostum negotiated a commercial agreement… Can I ask about preservation? Yes, Your Honor. So it doesn't seem to me that in your papers, in the motions to dismiss and responses, that the District Court was ever made aware of the specific prong of the commercial activity exception that y'all were relying on. Right? Well, two points about that, Your Honor. First of all, under this Court's decision in R&R… Can you answer me if I'm right first? Yes. We did, Your Honor, I think, through the discussion on pages 19 and 20, which was in the expropriation section, but it was pointing to paragraphs… I know, but that deals with an entirely different set of issues. You're right that you pointed to that statute in that language, but not in a way… Our preservation law is in a way that puts the District Court on notice of what it has to decide, right? Your Honor, I think that… Am I right? Well, it… That's our preservation law. It has to put on notice the issue that's under consideration. Right, that you want the District Court to decide, right? I mean, I'm just on basic principles of law. I'm not trying to get into it with you. No, yeah, I understand, but R&R International is relevant to that basic principle of law that Your Honor is asking about. Okay, so you didn't, in any way, that the District Court would notice that it had to decide this, make them aware of it. Your argument, I think, is, well, we teed up the general argument of commercial activity. That, clearly, you did. Right. And as a result of that, it was incumbent upon the court to then analyze all three separate prongs in order to decide whether our complaint was sufficient or not, right? Correct, Your Honor. How is that the case? So, explain to me your view of the difference between an argument where you can bring new ones up on appeal and issues for which you cannot bring new ones up on appeal. The argument is a particular legal ground or set of legal precedent that supports an issue. So, the classic example is, we didn't bring this particular case to the court's attention, although we brought the issue up, we found it in our research, and we have better appellate lawyers now, and we're now letting you know there's a case right on point. You're not precluded from doing that. That's the classic example, right? Yes, Your Honor. How is a separate prong with different elements of a statute the same as what I just articulated as that paradigmatic example? Well, for two reasons, Your Honor. By invoking the commercial activity exception, which includes three clauses, I contend a little bit with the idea that they're separate prongs. It's one section, and... But it doesn't have one, two, and three attached to it, but there really are three separate ways that are very different and require different findings and different allegations in order to meet the waiver, right? Or meet the exception, right? Yes, Your Honor. And the key point here is those allegations were made with specificity, including... Which paragraph is that? Because I'm just looking at paragraph four, where it's very general. It just says engaging in commercial activity, and that's it. It was also the attachment to the complaint included the agreement in the motion to dismiss opposition. Where they acknowledge that they're engaging in commercial activity, but I don't believe that the agreement also breaks down which sub part. Your Honor, it acknowledges that it's engaging in commercial activity and that the payment must be owed and paid in the United States. And then through this court's case law, the decision to terminate and not pay the liquidated damages as a matter of law takes place outside of the United States. Okay, maybe this is easier. So which provision in the commercial activity section are you all claiming or really are you just saying, is this a commercial activity and we're going to take our chances to see which subsection sticks? No, Your Honor. It's the third clause of the commercial activity exception in the statute. So third clause, just as in our international, when this court looked at all three clauses and determined on its own, because at that point, the plaintiff still hadn't identified which clause it was proceeding upon Judge Luck, even on appeal. And this court undertook the process to determine on its own, all three, which of the three clauses could apply. So I think to Judge Luck's point, you're saying that's the onus that the court should assume? Yes, Your Honor, because the court, in the context of subject matter jurisdiction, always has the obligation to determine its own jurisdiction. But that would be a situation. So if you said commercial activity, and your complaint says, A, but we on our own say, actually, we think it's C, maybe that's possible. But in the first instance where we get to decide which one is in your favor, is that the proposition? The proposition is where the plaintiff alleges sufficient facts to support one of the clauses of the exception, which is what happened here. The allegations plus the agreement together clearly support the third clause and no other clause. Just as in our international, there's no other clause that's potentially at issue. I mean, that's really the issue that R&R specifically says that, well, one, R&R has the initial burden of establishing jurisdiction under an exception. But then the court says R&R does not specify which circumstance applies. And then we conclude that the only possible avenue to jurisdiction is through the third clause. So this court then determined which clause would be applicable. Yes, Your Honor. Let me ask, I want to go back to the issue and argument. Because your opposing counsel says that the difference between the two is where there is a requirement for a court to decide independent things. And at that point, it becomes an issue, not just an alternative argument. In other words, it's not just like giving a new case or a new twist on the same thing. It is instead asking for something very different. And here, it looks like if the court had gotten past, for example, the first prong and gotten to the burden shifting part of this, the court would be asked to find some very different things for what we'll call Clause 3 than it would be for Clause 1 and 2, right? Yes, Your Honor. At that point, how is it not a new issue? Again, let's assume we're in front of the district court. How is the district court to know, how am I as a district judge to know you want me to rely as an exception to what is clearly applicable, the clearly applicable Foreign Sovereign Immunity Act, an exception to that for the Clause 3, not the Clause 1 and Clause 2, where you don't tell me that. And Clause 3 requires me to make independent findings of an act happened outside and the effect was in the United States as opposed to the act happening in the United States or different findings for the other two clauses. Because of the procedural posture in this case, Your Honor. What's been alleged here is sufficient to satisfy one and only one prong. The allegations have to be read in the light most favorable to the plaintiff. And the district court has an obligation, an affirmative obligation, to determine whether it has jurisdiction. And I think that our and our international... But you're imposing an exception. You're certainly right that as a general matter, a court can on its own decide subject matter jurisdiction. But we have imposed a burden shifting framework with regard to Foreign Sovereign Immunities Act. And that is, there needs to be initial allegations of specific exception. First of all, it needs to apply. Assuming it applies, there needs to be allegations of the specific exceptions. If there are, then there's a burden shifting framework in terms of evidence, and then it becomes a factual attack. That's how we generally go through these things. And that's what the district court aimed to do here. And I just... How is the district court to know that it's supposed to rely on this exception as opposed to the other two where it's not told to do that? I have two responses to that, Your Honor. First, and I will sound a little bit like a broken record. I mean, I think this question that you asked is answered by our and our international directly. This court did exactly what you're asking whether the district court should have done. And it found jurisdiction under that circumstance, even though the district court had found no jurisdiction. So I think it's completely reasonable in this context and dictated by this court's precedent that the district court do that. Second, in this procedural context with this particular statute... Do you believe that that case says that court of appeals, every future panel is required on its own to evaluate independently each and every clause, no matter whether it was preserved below, and no matter whether it was argued below, and no matter whether the district court relied on different clauses in order to reach the determination. That's what that case stands for and says? I think what that case stands for is it's... Judge Ligo had just read exactly the portion you're relying on. I didn't hear it say that. Well, what it clearly said is that just because a plaintiff doesn't identify which clause of the commercial activity exception it's relying upon is not sufficient basis to find no jurisdiction. No, it's that the court on its own can, if it wishes, decide. Not that it must, and not that you are unburdened of preservation. And, Your Honor, if this were a situation that, for example, has been raised where the allegations allege facts that supported a different clause, if there were an argument about that, or if the plaintiff specifically invoked one of the other clauses, then I think the preservation issue that Your Honor raises would be a greater concern. But in this situation where the allegations only satisfy one of the three clauses, and it's the third clause, and where the portions of the agreement that satisfy that clause are specifically called out, where there is discussion in opposition to the motion to dismiss about that clause. In R&R, this court found that the district court erred. It conflated the lack of subject matter jurisdiction with whether it was a separate question from whether there was a claim for relief could be stated. And we found that the district court erred by concluding that it lacked subject matter jurisdiction because the issuance of the colonization bonds was a commercial activity, and the ban's refusal to honor those bonds caused a direct effect in the United States jurisdiction exists under the commercial activity exception to the Foreign Sovereign Immunities Act. Yes, Your Honor, but the court only got there because it on its own. Yeah. And so the question is, what was the court doing by getting to that stage? Was it saying in its discretion, it did that? Or was it as a matter of de novo review, the same review that a district judge should apply in the circumstance was obligated to determine his or her own jurisdiction? Does it have an obligation where the commercial activity exception is specifically invoked to look at the factual allegations and determine which of the three clauses it satisfies? I believe that R&R International answers that question in the affirmative because that's what this court did. And it was error for the district judge in this case to just sweep the exception aside without any analysis on that basis. Thank you, Your Honor. Move this a little bit. Good morning. I'm Keith Bradley representing InfoStone. And I'd like to actually just continue that conversation because I think it is actually a little bit worse and even very different from R&R. I agree with you that R&R does not say what Mr. Palombos thinks it does. But what does it say? I think I think it gives the court the discretion if it chooses to find alternate bases of jurisdiction. It does not obligate obligate the court, nor does it excuse a party from from failing to preserve, especially in the face of an objection. And as you know, we do object. But there's another important difference here. And Judge Abudu, you had mentioned that the allegations are very general. There is one thing that is very specific about them. This is paragraph four in the complaint. This court has jurisdiction pursuant to 1605A2. They did not, as in R&R, say there's commercial activity relying on A. They specifically invoked A2. So it's unsurprising that that's the that's the clause that the district court analyzed. So this is not just that they haven't preserved. This is, in fact, a species of invited error. Mr. Palombos talks about a court's obligation to determine its own jurisdiction. I think, unfortunately, he has this a bit backwards. Yes, if a court if the parties haven't raised a jurisdictional concern, the court has an obligation to assess for itself. Is there a reason I might not have jurisdiction? But courts don't have an obligation to make a party's case for it. And the court does not have an obligation to find some way that I do have jurisdiction. Well, in our court, we issue jurisdictional questions because we want to be clear. I mean, in those instances, perhaps we could just dismiss an appeal because the briefs or the documents below don't provide enough clarity. And it's not our obligation. But in an effort to be efficient and to give parties that have already spent a considerable amount of money to get to where they are, we will ask for clarification. Should the district court at least have done that, especially given the discretion that we've all acknowledged the court had with respect to this determination? Respectfully, Your Honor, no, because they did have that opportunity. Our papers said that they had not before the district court. Our papers said they have not adequately shown this exception. And their response to the motion to dismiss is not telling you what they've you know what exactly they're they're they're thinking it is. So the the process that you're suggesting is one that we put forth and they've never attempted to respond before the district court. So, in other words, they've had that chance. Let's assume for the moment that we decide on our own that we do wish to go through with this. Why is the why are the allegations not sufficient? Meaning the we'll call clause three. Yeah. So so clause three is going to require that the claims are based on commercial activity outside the United States. Here would be the Dominican Republic that have a direct effect in the United States. Right. So the direct effect that's so so what are they based on the this court and other courts precedents teach us that the the contracting is not the basis of the claim that you have to be looking for. What is the the claim is based on the harm that the harm was commercial activity that gave rise to direct effect in the United States. So what have they alleged they have alleged that they received a termination notice in February. And that by let's see here four months later, they had not received a termination payment. That was not actually due yet by the time they fired the complaint. So their theory is that that failure to pay a payment that was not yet due represents a decision by in post not to pay. And that has direct effect in the United States under their theory because of Argentina V. Weltover, this case that involves payments that are specified to be made to a specific bank in New York. So they don't but they don't have an allegation of that. What they've got is a contract that says that payments for services here under are are to be that they're going to be receiving them in Florida. The contract itself contemplates many payments to be made outside the United States. The payment that they're complaining payment that wasn't even due yet was not payment for services under the contract. So they don't they don't come within Weltover in terms of specifically the provision you're referring to, which is paragraph 12 of the contract specifically says that it shall receive payment for services rendered here under. Yes, but this is not payment for services rendered her under. But that's what the contract says. Well, there are under the contract had the contract, you know, continued over the course of its over time, there would have been payments for services her under. But that clause does not say that this payment, the termination payment is payment for services her under. So in other words, it does not like on the face of this in paragraph 12. It makes no sense because isn't the payment that they're suing for is the termination payment because there was a breach. Right. Breach of the contract for services that have been performed over the course of the year or so that the contract have been in force. Right. Well, I hear their argument that I see. I see that we're going to disagree about the interpretation of paragraph 12. But I'm going to offer you something further, though, which is that it does not say it says that Mia Cargos is situated in Florida and shall receive payment there. The contract does clearly contemplate many payments for services that are to be made outside of Florida. There are other clauses that we can walk through. So this is simply a recitation. And I would suggest to you that a recitation like that. You know, the cases say that a waiver is must be very explicit and construed in favor of the sovereign. The notion that by simply reciting we'll be receiving payments in Florida gets around then. Yeah. But this is why at this stage we only look to this is why there is this burden shifting framework. There has to be allegations that are sufficient. Of course, the allegations have to be proven down the road. And you can challenge subject matter jurisdiction at any time down the road. And that's why if there are allegations are there, you then can present evidence on the other side and then go back. But here the district court found an insufficiency in step one. It may be that you're right that when there is that factual attack and challenge, which you tried to do, that that may be the case. But the district court cut it off at its knees by accepting the argument that that the allegations have been insufficient. Well, that's why we're here. That's why we're having this. Yeah. With respect to commercial activity. Yes. With respect to commercial activity. Agreed. Although, of course, it was not even analyzing this. And we've already been through it. But I want to come back to also what this court has held is that a failure to pay is not in itself an act having direct effect. I agree. But we're past. I mean, we seem past that. And if the allegation is that payment was to occur or shall occur, we haven't. We said in Dibin Jagowia, I'm going to permit. I'm sure I'm butchering that. I will because I'm not going to say the name again because that person alleges that payment was to occur to him. And because he sufficiently asserted that Venezuela knew he resided in Florida there, he didn't even say where he lived here. We know it's Florida in the United States. We understand a Second Amendment complaint to allege that Venezuela was required to either make the payment to that person in Florida. Nothing in the record alleges or suggests that that person maintains an account outside the United States. So on a motion to dismiss, we reasonably understand the allegations in the light most favorable to him and to mean that payment was to occur in the U.S. Well, I'm yes, but I'm actually if I could redirect the thing that I'm the objection that I'm talking about. In addition, is that in that case, because I'm not going to butcher the name. Thank you. The the the materials are to be returned. There's no question that it's overdue. There's no question that they have refused to return them based on the allegations of the complaint. Here, the allegations of the complaint are that they terminated and they haven't paid me yet. But it's not even due yet. Under the allegations, the complaint, they filed this lawsuit at a time when the under the terms of the contract, the payment wasn't even due yet. So failing to pay it by that date doesn't show a refusal to pay or a decision not to pay. It's just they haven't paid yet and terminated. The termination is not effective until six months after the notice under the contract. And this is I'm sorry, so your whole argument is that this suit was premature. That is an important part of the argument. Yes, your honor. And I will say that four months after this, after filing here, they filed a lawsuit against InfoStump in Dominican court. So there is a proceeding in parallel where they're raising their breach allegations, et cetera, in Dominican court. Somewhat in contradiction to their assertion that Florida, you know, that this the U.S. courts have exclusive jurisdiction. But yes, that is not the entirety of our argument. That is that is an important strain is premature because there is like the fact that the payment has not been made, does not show a decision not to pay it. And we're here just on subject matter jurisdiction, because that's all the discipline you're going way off into a tangent, because really the question is whether or not the district court erred in finding that he did not have subject matter jurisdiction. And therefore dismissing the complaint. Well, yes, your honor. But I don't think that it is so far afield. This court has said on the one hand, a mere failure to pay is not a a commercial act having a direct effect in the United States. That is the and then at the same time, we know what is the the six month provision, not in addition to this payment of the sum. So if you look at paragraph three of the contract, it explains that that the post office can terminate at any time by, quote, providing six months written notice, dot, dot, dot. I'm not going to read the whole thing and to paying dot, dot, dot. The sum of 10 million. It's not six months and then we pay. It's that termination is six months notice and payment. Well, if you read it that way, your honor, then that means the contract that the not paying that that I take your idea to be. And if you read it, that my idea, I'm just reading the language. OK, but if you read the language that way, that what it means is if I want to terminate the contract, then I have to give you six months notice and pay you 10 million dollars to make the contract be terminated. If I so uses the word and it doesn't use the word or. Right. Or or or six months and then after six months pay doesn't say that. Yeah. But if you read it that way, then you then both of those things are conditions. Well, let me put it this way. At this stage, we read it in the light most favorable, not to you, but to the other guy. I well, respectfully, your honor, you read factual allegations in the complaint. This is what I'm talking about. Right. This is not a factual. It's attached to the complaint. It's incorporated and attached into the complaint. Yes, but if there are two reasonable ways to read the contract at this at this early stage in the game, then we would read that also in the light against you. And so then again, that doesn't mean they win. It just means that we then get to the next step and then the step after that. Right. Right. Right. Yeah. Agreed. The so ordinarily, I mean, I ordinarily in a contract, the way this for this kind of provision would be set up would be that the termination payment is due when the contract is over. I'm not going to run away if I was writing the contract. Sure. Yeah. If you read it the way that you are suggesting. That means that the termination has never happened because we haven't satisfied the conditions presented to terminating. No, it just means that where there's a termination, you owe you terminate the contract. It was a press conference, as I understand, where the executive director of your client announced the contract is terminated. We'll call that the notice. That's six month time. At that point, if read that way, the ten million dollars were due. Right. Well, I actually I don't know. You're going beyond favorable reading because it does say six months written notice. Nobody's alleged that the press conference was written. OK, but this is a breach of contract. They're saying you breached a contract. You haven't even. Well, doesn't matter. Well, I and so the commercial activity is in the alternative. Right. We also have the waiver of sovereign immunity. So I did want to give you an opportunity to speak to that. I do think that I think it's the G.G.D.C. case does make a strong argument that you have to be some public official in order to have authority to waive. But I do think it is interesting that the record in this case shows there was a contract that didn't include a waiver provision. But the one at issue does. Number one, is there anything in the record to explain that difference? And then number two, you know, what is your position still before us as to why the waiver provision, which was signed, executed and behavior occurred after the contract went into effect? It's not sufficient. So the the two contracts is my answer for why there is there is behavior. This is an unusual case in which there is a first contract, which, by the way, is in Spanish as such contracts with the Dominican agency should be. So whatever behavior occurred is not necessarily behavior under the second contract. Our view of the second contract is that it was, you know, Mr. Bagheera didn't have the authority to do this. And the supposed board resolution that authorizes it is not a document of the Dominican Republic. It's not a resolution of InfoStumps board. We don't know what it is. We don't know where it came from. It is signed by a notary who was not a part of the board and included a board member of the purported board members. So the second contract, from our view, and I apologize. May I finish this thought? Go ahead and finish answering Judge's question and wrap up, please. Our view is that the second contract is not a contract with InfoStump at all and that InfoStump would never have agreed to a contract. We be purporting to waive the sovereign immunity of the entire Dominican government. Thank you. Thank you, Your Honors. I'd like to start by just addressing again the preservation issue that you raised, Judge Luck, with respect to commercial activity exception. I'd like to point, Your Honor, specifically to page 20 of the opposition to the motion to dismiss where paragraph 12 of the agreement is quoted. And in particular, the language about payment being due in Florida. That comes in the context, Your Honor, of a discussion on the prior page, page 19, where the third prong, the third clause of the commercial activity exception is discussed at length. We talked about this. That's in the expropriation section. I understand, Your Honor, but this is to the point that it's more than just not pure silence on this issue. I know, but the district courts have 300 cases. I know yours is the most important, and it is, but so is the 299 others. And how is the district court judge supposed to know that in the two last pages of your opposition under a section that has nothing to do with this, the district court is supposed to undertake a review of something that it was never asked to undertake a review of? And your complaint specifically points to another separate section of the statute. I just I understand your point. I do. I just I'm also very sympathetic to district courts who are put in a very unfair position when we then take up something that they were never really asked to do. Well, I understand, Your Honor. This is, I think, the best evidence in the record in support of our position. I appreciate that. With regard to the question of whether this suit is premature, Your Honor, Judge Luck, I do agree with your reading of paragraph three. The other point that I'd make is whatever might have been the case when this suit was originally filed. I mean, there's no question this contract has been terminated in the sense nobody is performing under it. It's been publicly announced. There's been no offer to continue performing under it by impostum. So that is moot at this point. The court raised a question about the waiver exception. I do want to just take the last minute to address that, as I think we heard from counsel's response that there are factual disputes. Undeniably, there are factual disputes with respect to the waiver issue and where this what this agreement was, whether it was approved by the board because there is evidence in the record that it was approved by the board and the board is the principal in this situation. They authorize their agent, the general director of impostum, to sign it. So those are factual disputes that are all for the merits at this point. But what this court's case law holds in Aquamar, GDG, Devon, Goetia is that the court should accept the allegations in the complaint as pleaded and as the district court did in this case. But in those cases, so one, I think we have a case that really rests on the fact that it was an agent of the government. I think in one of the cases it was an ambassador. And then you have other cases that suggest the waiver might kind of be tied to the commercial activity provision and that the government through this agent then took steps. They made payments or they took other steps under the contract. That was almost like an implicit understanding of the waiver. But do we have any of those facts or maybe that's what you're saying? Those are the facts that need to be determined. Well, first of all, we do have the fact that Mr. Pagaro, who signed the contract, is the general director of impostum. That's undisputed. And it is disputed whether he was authorized by the board to sign it. But there's no question that he was a government agent. And there is evidence in the record that he was authorized to do that. And Devin Goetia is the case that's most on point to how the court should analyze this. It says that in those circumstances, very similar allegations with regard to the negotiations and entry of an alleged agreement, which might or may not ultimately be proved were sufficient for the commercial activity exception. But the same analysis would apply for waiver. And I thank you. Thank you very much. We're adjourned for the day. Thank you very much. Thank you.